UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11624-RWZ

RUTH HEGGIE

v.

THE TJX COMPANIES, INC.,
and MARSHALLS OF MASSACHUSETTS, INC.

Memorandum of Decision

June 6, 2012

ZOBEL, D.J.

Plaintiff, Ruth Heggie, claims against defendants in three counts alleging retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615 (Count I); discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq., and the Massachusetts counterpart, Mass. Gen. Laws ch. 151B § (16) (Count II); and breach of contract (Count III).

**I. Background**

Plaintiff, who began working at a Marshalls retail store (owned by and operated by defendants) as an associate in April 2004 and is still so employed, alleges she suffers from a cardiac condition that substantially limits one or more of her major life functions. In May 2007, she had heart surgery to repair a tear in her aortic valve. She did not return to work until November 2007, and defendants designated plaintiff's time

off as FMLA leave. Originally, plaintiff worked 37.5 hours per week. Upon returning to work, plaintiff's physician recommended that she only work 20-hour weeks for the first four weeks. Plaintiff alleges that her then supervisor, Allen Courage, "agreed that Heggie would gradually return to a full-time schedule." Courage was soon replaced by Karen Marinskovitch as plaintiff's supervisor. Despite several requests by plaintiff that she be returned to full-time status, Marinskovitch never adjusted plaintiff's hours.

On December 27, 2007, defendants notified plaintiff that she would not retain her benefits if she did not maintain a weekly work schedule of 24 hours. She was then receiving short- and long-term disability benefits and health insurance.

In June 2008 plaintiff requested and was granted one week of vacation time to care for her husband who was to undergo surgery. However, when she requested a change of date to accommodate a rescheduling of the surgery, Marinskovitch denied the request. Plaintiff appealed to defendants' "Associate Relations" program and was given the week she required as FMLA leave. Plaintiff alleges that upon her return Marinskovitch reduced her hours even further (to as little as 5.5 hours per week on at least one occasion).

On August 18, 2009, defendants discontinued plaintiff's benefits including her health insurance for failure to work the requisite number of hours.

Plaintiff filed her complaint in state court on August 18, 2011. Defendants removed and now seek dismissal of her claims as time-barred and substantively defective.

**II. Analysis**

**A. FMLA Claim**

The FMLA entitles employees to take reasonable leave for medical reasons or to care for a child, spouse, or parent who has a serious health condition. 29 U.S.C. § 2601 (b)(2). Eligible employees are "entitled to a total of 12 workweeks of leave during any 12-month period." 29 U.S.C. § 2612(a)(1). An employer may not retaliate against an employee for exercising her rights under the FMLA. 29 C.F.R. § 825.220(c); Hodgens v. General Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998).

The statute provides a two-year limitations period, see 29 U.S.C. § 2617(c)(1), which may be extended to three years if a plaintiff can establish a willful violation. See id. § 2617(c)(2).

According to the complaint, plaintiff returned to work in November 2007 after cardiac surgery without restriction except for the doctor's recommendation that she work only 20 hours per week for the first four weeks. Her hours were so reduced, but plaintiff has not achieved full-time status since then. She took a one-week leave in June 2008, and upon her return her hours were further reduced.

Plaintiff asserts that defendants' continued refusal to provide full-time work and the revocation of her benefits on August 18, 2009, established separate harms under the FMLA for statute of limitations purposes. The argument is unavailing. FMLA claims for retaliation of discrete acts accrue when the adverse employment event is realized. See Hanger v. Lake County, 390 F.3d 579, 583 (8th Cir. 2005) (citing Delaware State College v. Ricks, 449 U.S. 250, 258 (1980)); Cf. National R.R. Passenger Corp. v. Morgan, 532 U.S. 101, 110 (2002) ("discrete retaliatory or discriminatory act 'occurred'

on the day that it 'happened... [c]ommonly cited examples of discrete acts include termination, failure to promote, denial of transfer, or refusal to hire.'"). Given that the reduction began in November 2007 and that plaintiff's hours were further reduced in June 2008, the claims for FMLA purposes accrued in or around November 2007 and June 2008, respectively. They are outside the actionable period regardless of whether the two- or three-year bar is applied.

The revocation of plaintiff's benefits by defendants in August 2009 does not constitute a separate discriminatory act. It resulted from plaintiff's inability to work the requisite number of hours, which, as plaintiff alleges, was the direct result of defendants' retaliation for her exercising her leave rights under the FMLA. Id. at 583 ("each and every instance when [employment] changes may have been enforced [does not] constitute[] a new violation of the FMLA"); Beekman v. Nestle Purina Petcare Co., 635 F. Supp. 2d 893, 907 (N.D. Iowa 2009); Maher v. Int'l Paper Co., 600 F. Supp. 2d 940, 950 (W.D. Mich. 2009) (citing unabrogated reasoning in Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007), which found "... charging period is triggered when a discrete unlawful practice takes place. A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination.").

**B. ADA Claim**

Plaintiff also claims under the ADA, albeit without reference to any specific provision. I assume she intends to invoke 42 U.S.C. § 12112(a), which provides:

4

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

To prevail under this provision, "a plaintiff must show by a preponderance of the evidence that [she] (1) has a disability within the meaning of the ADA; (2) is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) was subject to an adverse employment action based in whole or part on [her] disability." <u>Ramos-Echevarria v. Pichis, Inc.</u>, 659 F.3d 182, 186 (1st Cir. 2011).

Plaintiff alleges that "defendants discriminated against [her] on the basis of her disability and/or [her husband's] disability by refusing to increase her hours to full-time status and by refusing to provide her health insurance." To the extent she claims discrimination based upon her husband's June 2008 surgery she fails to meet the first prong of <u>Ramos</u>. To the extent plaintiff claims that she was discriminated against on the basis of her cardiac condition, she does not sufficiently allege such discrimination. Rather she specifically states that the motivation for the retaliation upon her return from surgery in November 2007 was her taking five months of leave. Plaintiff therefore fails to allege facts that satisfy the third prong of <u>Ramos</u> – that the adverse employment action was "based in whole or in part on [her] disability."

In any event, a plaintiff claiming under the ADA must first file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") or with a parallel state agency before a civil action may be brought. <u>Bonilla v. Muebles J.J. Alvarez, Inc.</u>, 194 F.3d 275, 277 (1st Cir. 1999) ("the ADA mandates compliance with the

5

administrative procedures specified under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ..."). "Title 42 U.S.C. § 20000e-5(e)(1) .... specifies with precision ... [that an] individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made..." Morgan, 536 U.S. at 109." A claim is time barred if it is not filed within these time limits." Plaintiff filed a charge of discrimination with the EEOC and the MCAD on March 4, 2011, years after the conduct of which she complains. However, her ADA claim can be based only on conduct occurring, at most, 300 dkays prior to the filing.

Plaintiff argues that because she is assigned work on a weekly basis, each work schedule constitutes a separate violation of the statute. However, the assignment of reduced hours, as plaintiff alleges, is the result of her taking medical leave in 2007 and 2008, not of separate discrete acts of discrimination. See Altair Corp. v. Pesquera de Busquets, 769 F.2d 30, 32 (1st Cir.1985) (plaintiff's "argument ... confuses a continuing act with a single act that has continuing consequences"); Velázquez v. Chardón, 736 F.2d 831, 833 (1st Cir.1984) (citing Perez v. Laredo Junior College, 706 F.2d 731, 733-34 (5th Cir.1983) ("If the discrimination alleged is a single act, the statute begins to run at the time of the act."); Goldman v. Sears, Roebuck & Co., 607 F.2d 1014, 1018 (1st Cir. 1979) (violation is not stated if all that is alleged in the complaint is that "plaintiff continues to suffer from the ongoing effects of some past act of discrimination."). Plaintiff also argues that even if the work schedules are considered a continuation of discrete discriminatory acts occurring outside the statutory period, the Lilly Ledbetter Fair Pay Act ("FPA"), 42 U.S.C.A. § 2000e–5(e)(3)(A), renders such a

6

distinction ineffectual and allows plaintiff to sue for the prior harm each time a new work schedule is issued. However, the FPA is limited specifically to claims of "discriminatory compensation practices"; it does not apply to generalized discrimination claims such as failure to promote, reinstate, or assign increased hours, as plaintiff alleges. See e.g., Noel v. The Boeing Company, 622 F.3d 266, 273 (3rd Cir. 2010) ("discrimination in compensation means paying different wages or providing different benefits to similarly situated employees, not promoting one employee but not another."); Almond v. Unified School District, F. Supp.2d 1996, 1208-09 (D. Kan. 2010) ("Act clearly limits 'discrimination in compensation,' and leaves intact other kinds of discrimination recognized under pre-Ledbetter case law"); Matthews v. Corning Incorporated, 737 F. Supp. 2d 133, 136 (W.D.N.Y. 2010) (collecting cases and finding the FPA does not apply to "generalized discrimination claims").

### C. Massachusetts State Law and Common Law Contract Claims

Lastly, plaintiff claims common law breach of contract and violations of the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws ch. 151B § 4(16). Because no federal claims remain, I decline to exercise supplemental jurisdiction over the state law claims. Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).

### III. Conclusion

Defendants' renewed motion to dismiss plaintiff's FMLA and ADA claims (Docket # 13) is ALLOWED. It is ordered that the case be remanded to Middlesex Superior Court for resolution of the state law claims.

| June 6, 2012 | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |